**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM WRIGHT,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| **v.** | ) | **NO.** |
| | ) | |
| **VILLAGE OF HOMEWOOD, an Illinois** | ) | |
| **Municipal Corporation,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

```
FILED: APRIL 17, 2008
   08CV 2241    NF
JUDGE LEFKOW
MAGISTRATE JUDGE BROWN
```

## COMPLAINT

Plaintiff, **WILLIAM WRIGHT,** by his attorneys, Odelson and Sterk, Ltd.,

complains against Defendant, **VILLAGE OF HOMEWOOD**, **an Illinois Municipal**

**corporation,** as follows:

### JURISDICTION AND VENUE

1.    This Complaint is brought pursuant to 42 U.S.C. §1983.  Jurisdiction is

provided for at 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3).

2.    The acts complained of herein all occurred within or near Cook County,

Illinois.  Venue is proper pursuant to 28 U.S.C. §1391(b).

### PARTIES

3.    Plaintiff, WILLIAM WRIGHT (**WRIGHT**), is a citizen of the United States

and a resident of HOMEWOOD, Cook County, Illinois, and employed with the

Homewood Fire Department.

4.    The Village of Homewood (**HOMEWOOD**) is an Illinois Municipal

corporation created pursuant to the provisions of the Illinois Municipal code 65 ILCS

5/1-1-1 et seq.  HOMEWOOD is a body politic organized and existing under the constitutional laws of the State of Illinois and located in Cook County, Illinois.

5.    RICHARD A. HOFELD (**HOFELD**) is an Illinois resident and currently serves as Mayor for the Village of HOMEWOOD.  HOFELD was elected Mayor in 1996.

6.    MARK FRANZ (**FRANZ**) is an Illinois resident and is currently employed as the Village Manager for the Village of HOMEWOOD.

7.    RAY PRESNAK (**PRESNAK**) is an Illinois resident and former Chief of the Homewood Fire Department.  PRESNAK was appointed to the position of Fire Chief by Mayor HOFELD in 1996.  During HOFELD's 1996 election campaign, he promised  to appoint PRESNAK Fire Chief if elected Mayor.  PRESNAK and HOFELD have been very good friends, if not best friends, for many years.

8.    JOHN ELASIK, SR. (**ELASIK**) is an Illinois resident and at all relevant times the Chairman of the Homewood Fire and Police Commission.  ELASIK, HOFELD and PRESNAK have been very good friends, if not best friends, for many years.

## FACTS

9.    WRIGHT was born and raised in the Village of HOMEWOOD.  WRIGHT was raised in a large family with many ties to the HOMEWOOD community and continues to reside in HOMEWOOD with his wife and children.  Prior to the Spring of 2006, WRIGHT was a well known and respected member of the community.

10.    WRIGHT began working with the Homewood Fire Department in 1979 as a sixteen (16) year old cadet.

11.    WRIGHT became a paid on call (POC) firefighter for the Homewood Fire Department in 1981.  Since 1981, WRIGHT has been very active with the fire department, and was promoted to (POC) engineer and then (POC) lieutenant.

12.    In 1989, WRIGHT applied to become a full-time firefighter with the Homewood Fire Department.  WRIGHT received the highest total score on the 1989 entrance exam.

13.    WRIGHT has received numerous awards and commendations during his career as a firefighter with the Homewood Fire Department, including being named "Fireman of the Year" in 1992 and 1995.

14.    During the 1990's, WRIGHT was in charge of public education for the Homewood Fire Department.  During this time period, WRIGHT became known as "Fireman Bill" by local school children, their parents, and residents of the community. WRIGHT was well known throughout the community as a resident and fireman.

15.    In 2000, WRIGHT was promoted by the Homewood Fire Department to the position of lieutenant.

16.    Throughout his career as a HOMEWOOD fireman, WRIGHT has consistently received excellent job performance evaluations from his superiors and has received numerous awards from the department.

17.    WRIGHT's father, Francis Wright, served as a Trustee on the HOMEWOOD Village Board from 1971-1979, as a member of the "CIP" party.

18.    HOMEWOOD's current Mayor, HOFELD, served as a Trustee on the Village Board during the same time period (1971 - 1979), as a member of the "GHP" party.

3

19.    Francis Wright and HOFELD were openly opposed to each other both politically and personally, during the time they served as Trustees on the Village Board.

20.    HOFELD was elected to the office of Mayor in 1996.

21.    HOFELD appointed FRANZ to the position of Village Manager with the advise and consent of the Village Board.  HOFELD has subsequently reappointed FRANZ as Village Manager.

22.    WRIGHT was instrumental in leading the effort to unionize the Homewood Fire Department in the 1990's.  WRIGHT's unionizing efforts were opposed by Mayor HOFELD and Fire Chief PRESNAK.

23.    WRIGHT served as union president between1997 and 2000.

24.    In 2003, WRIGHT was asked to run as a candidate for School Board Trustee for School District 153.  WRIGHT ran with a political party opposed to Mayor HOFELD's GHP party.

25.    WRIGHT, despite having no political background or conducting any type of a campaign, received the highest number of votes, and was elected as a School Board Trustee by a landslide result.

26.    Shortly before the 2003 School Board election, Mayor HOFELD made statements to various HOMEWOOD residents that "they should make sure Bill (WRIGHT) knows who signs his checks."

27.    During the 2004 municipal election, an election in which WRIGHT was not a candidate, Mayor HOFELD accused WRIGHT of putting up political signs for a party opposed to Mayor HOFELD's GHP party.  Mayor HOFELD advised WRIGHT he "was helping the wrong side."

4

28.     The Fire and Police Commission, pursuant to state statute, is comprised of three (3) members who are appointed by the Mayor with the advice and consent of the Village Board.

29.     During all relevant times, the Chairman of the Homewood Fire and Police Commission has been John ELASIK, Sr.  ELASIK was appointed to the Fire and Police Commission by Mayor HOFELD.  It is a well known in the HOMEWOOD community that HOFELD, PRESNAK and ELASIK have been best friends for many years.

## HINKO ALLEGATION

30.     On April 22, 2006, Sarah HINKO claimed that WRIGHT bumped his shoulder into her chest during a parade in the Village of HOMEWOOD. At the time of this alleged incident, WRIGHT and fellow firefighters were crossing the street to get to the firehouse to respond to a call.

31.     At the time of the alleged incident, Sarah HINKO's husband, Scott HINKO, was a POC HOMEWOOD firefighter.

32.     Ms. HINKO did not report the alleged bumping incident of April 22, 2006 until April 25, 2006.

33.     Although this alleged incident happened along a parade route with many residents and on lookers, there were no independent witnesses to verify HINKO's claim that WRIGHT bumped into HINKO or made any type of physical contact with HINKO on that date.

34.     On April 27, 2006, WRIGHT was interviewed by HOMEWOOD Police Officer Janich regarding HINKO's allegations.  WRIGHT denied having any physical contact with HINKO on April 22, 2006.

35.    The Village of HOMEWOOD conducted an internal investigation. FRANZ, PRESNAK, and the Village Attorney were directly involved in the investigation. Upon information and belief, HOFELD was fully aware and kept apprised of the investigation.

36.    On June 7, 2006, charges stemming from Sarah HINKO's allegations were issued by Chief PRESNAK and filed with the Fire and Police Commission. WRIGHT was served with the Notice of Hearing and Charges. The charges that were filed requested the Fire and Police Commission to terminate WRIGHT from the department.

37.    Assistant Village Manager, Jim Marino, issued a confidential memorandum to Village officials, including FRANZ, HOFELD and PRESNAK, regarding his investigation into HINKO's allegations. Mr. Marino's report concluded HINKO's allegations were inconclusive and explained why the allegations were inconclusive. Mr. Marino's complete report, however, was not turned over to WRIGHT or his attorney prior to the June 7, 2006 hearing date.[1]  WRIGHT only received the portion of Mr. Marino's report which summarized some of the interviews that had been conducted. The portion of Mr. Marino's report that concluded HINKO's allegations were inconclusive, because of inconsistent witness statements and a lack of witness corroboration, was not turned over to WRIGHT or his attorney prior to the hearing.

38.    On July 6, 2006, the Fire and Police Commission conducted a hearing on the charges. At the conclusion of the hearing, the Fire and Police Commission found WRIGHT guilty of the charges and suspended WRIGHT for thirty (30) shift days.

_____

[1]  The June 7, 2006 hearing date was continued to July 6, 2006.

39.    On July 17, 2006, the Fire and Police Commission issued a written Decision in the HINKO matter in support of the thirty (30) day suspension issued to WRIGHT.

40.    WRIGHT served a thirty (30) day suspension pursuant to the direction of the Village.  As a result of the HINKO allegations and charges, WRIGHT was off duty for 104 calendar days.

41.    On or about August 6, 2006, WRIGHT filed a motion to reopen the HINKO matter based upon the Village's failure to inform WRIGHT and his attorney that Chief PRESNAK had tendered his resignation prior to the July 6, 2006 hearing due to a scandal surrounding the 2005 fire department entrance exam.  The fact that PRESNAK had tendered his resignation was not revealed to WRIGHT by the Village prior to the hearing.  Nor was the fact that Scott HINKO, Sarah HINKO's husband, was given a copy of the entrance exam prior to the exam date by PRESNAK.

42.    On September 22, 2006, the HINKO matter was reopened at the request of WRIGHT, because there were facts which affected HINKO and PRESNAK's credibility not known to WRIGHT at the time of the July 6, 2006 hearing.  Village officials, including HOFELD, FRANZ, PRESNAK and the Village Attorney, intentionally failed to disclose the existence of the entrance exam scandal involving Chief PRESNAK to WRIGHT or his attorney prior to the July 6, 2006 hearing.  The same Village officials intentionally failed to turn over Mr. Marino's complete report to WRIGHT and his attorney.  Upon information and belief, the decision to withhold the information relating to PRESNAK's resignation and Mr. Marino's conclusion in his investigation report was made by FRANZ, PRESNAK, HOFELD and the Village Attorney.

7

43.    Scott HINKO, Matt Moran and Ryan Tracy also worked together as POC firefighters with the Homewood Fire Department prior to the 2005 entrance exam.

44.    Scott HINKO, Matt Moran and Ryan Tracy worked together as full time firefighters and paramedics at the Hazel Crest Fire Department prior to the 2005 Homewood Fire Department entrance exam.

45.    Matt Moran is a HOMEWOOD firefighter and a close friend of Scott HINKO and his wife, Sarah HINKO.

46.    Matt Moran scored the highest on the 2005 Homewood Fire Department entrance exam.  Matt Moran is married to Liz Moran, who is a POC with the Homewood Fire Department.

47.    Ryan Tracy scored the second highest on the 2005 Homewood Fire Department entrance exam.

48.    Scott HINKO, despite having a copy of the entrance exam prior to the date of the exam, failed the 2005 Homewood Fire Department entrance exam.

49.    On July 28, 2006, the Village issued a press release stating PRESNAK was retiring as the Fire Chief.

50.    Liz Moran is a POC with the Homewood Fire Department and also holds the position as coordinator of the Emergency Operations Plan (EOP), wherein she works closely with FRANZ and PRESNAK.  Moran's EOP position allows her to set her own work schedule and she is paid more than POC firefighters.

51.    On and before August 6, 2006, the 2005 entrance exam scandal was highly publicized in the local press, in part because WRIGHT requested the HINKO

8

hearing be reopened, along with his continued investigation into the circumstances surrounding the test scandal.

52.    On August 8, 2006, WRIGHT returns to duty after completing the thirty (30) shift day suspension from the HINKO matter. On that date, Chief PRESNAK held a private meeting with WRIGHT shortly after WRIGHT reported for duty. During the brief meeting, Chief PRESNAK advises WRIGHT "nobody likes you" and "nobody wants to work with you."

53.    On August 8, 2006, WRIGHT began and completed his 24 hour shift without incident.  WRIGHT worked with firefighters Matt Moran, Tom Gaskin, and Matt DeJong.

54.    On August 11, 2006, WRIGHT reported to work for his next scheduled shift.  WRIGHT is advised POC firefighter Liz Moran has filed a battery complaint against him for alleged conduct during WRIGHT's shift on August 8, 2006.  WRIGHT is not advised of any specific allegations made by Liz Moran.

55.    Liz Moran does not report the August 8, 2006 alleged incident to any members of the fire department, family members, or friends on that date.

56.    POC Moran claims WRIGHT walked past her in the garage of the firehouse and intentionally brushed his left shoulder against her left breast.  At the time of the alleged incident, POC Moran's husband Matt Moran, and firefighters Gaskin and DeJong were approximately ten feet away and in clear view of Liz Moran.  None of the firefighters observed the conduct complained of by POC Moran and none of them reported anything unusual occurring between WRIGHT or Liz Moran.

9

57.    POC Moran did not tell her husband Matt anything about the alleged conduct at the time of the alleged incident or shortly thereafter.  POC Moran failed to report the incident to her husband during the remainder of his shift or when he returned home after his shift.

58.    POC Moran did not make any type of statement to WRIGHT at the time of the alleged conduct, nor did she report it to any fire department personnel on that date.

59.    Rather than reporting the alleged incident, POC Moran left the firehouse and went shopping for a bicycle.

60.    POC Moran, after speaking with Chief PRESNAK, reported the alleged incident to the police two days later.

61.    When WRIGHT reported for duty on August 11, 2006, he is immediately placed on paid leave by Chief PRESNAK.

62.    On August 11, 2006, WRIGHT was served with a local battery charge citation with POC Moran is listed as the complainant.  The local charge was assigned a court date for the battery charge to be heard by a Cook County Circuit Court Judge.

63.    On September 1, 2006, WRIGHT is formally interrogated by Attorney Greg Mitchell.  Attorney Mitchell was appointed by the Village to investigate and prosecute WRIGHT.  WRIGHT answers all of Attorney Mitchell's questions and denies all of Liz Moran's allegations

64.    On September 17, 2006, John Henrici is appointed as Interim Fire Chief by HOFELD.  Prior to his appointment, Henrici is advised by FRANZ of Moran's allegation against WRIGHT, was advised of the HINKO matter, the pending motion to

reopen that hearing, and the fact WRIGHT is currently on administrative leave pending the Moran investigation.

65    On Friday, September 22, 2006, WRIGHT is advised by Attorney Mitchell that the Village will dismiss the local ticket on Monday, September 22, 2006.  The Village takes this action on its own without consulting with Liz Moran, and issues a press release that WRIGHT's "situation will be handled administratively by the Village."

66    On Saturday, September 23, 2006, Chief PRESNAK and Chairman John ELASIK attend a party together and are overheard discussing WRIGHT, stating "he doesn't know what he is in for" and he will be "fired from the fire department."  These statements were made when there were no administrative charges of any kind pending against WRIGHT on the HINKO allegations.

67.    On September 25, 2006, the local battery charge is dismissed by Village in Circuit Court.  The Village advised Liz Moran the local charge in which she was the complainant, had been dismissed by the Village.

68.    On September 28, 2006, without conducting any independent investigation, without interviewing WRIGHT, or having even met WRIGHT, Interim Chief Henrici filed four charges against WRIGHT based upon Liz Moran's allegations.  Interim Chief Henrici took this action within days of being appointed as Interim Chief.  FRANZ and the Village attorney advised Henrici of Moran's allegations prior to his appointment as Interim Chief.

69.    The September 28, 2006 charges, which were prepared by the Village attorney, did not contain a hearing date.

11

70.     Interim Chief Henrici recommended that WRIGHT be terminated, claiming WRIGHT was totally unfit to serve as a lieutenant with the fire department.  Interim Chief Henrici makes this recommendation despite the fact he conducted no investigation into the allegations, had never met WRIGHT, had never worked with WRIGHT, and with no review of his personnel file which contained numerous awards and commendations.

71.     On October 11, 2006, the Fire and Police Commission grants WRIGHT's motion to reconsider the HINKO matter.  At this hearing, the evidence is presented relating to the entrance exam scandal, including former Chief PRESNAK's sworn testimony that he did not provide the 2005 entrance exam to anyone within the department, which directly contradicted the Village's press release and official statements that PRESNAK had provided a copy of the exam to HINKO.  Scott and Sarah HINKO invoked their 5th Amendment privilege not to testify at the rehearing in relation to the 2005 exam.  At the conclusion of the hearing, the Fire and Police Commission was forced to reverse its July 17, 2006 decision, based upon a lack of credibility of PRESNAK and HINKO, and dismissed the HINKO charges against WRIGHT.

72.     Minutes after the decision was announced, WRIGHT is served with a new set of charges by Interim Chief Henrici.  The charges are based upon Liz Moran's allegations, with a scheduled hearing date of October 24, 2006.  Although the HINKO charges had just been dismissed, Interim Chief Henrici recommends that WRIGHT be terminated from the department.

12

73.     Within days of the HINKO charges being dismissed, the Village files a petition to suspend WRIGHT without pay pending the Moran hearing.  The Village did not request WRIGHT to be placed on unpaid leave during the HINKO matter.  Attorney Mitchell advised WRIGHT's counsel that the prosecution of WRIGHT is being dictated by the Village Administration and that Attorney Mitchell is being given orders on how to handle the Moran case.

74.     On October 26, 2006, the Village's motion to suspend WRIGHT without pay is granted by Chairman ELASIK and the Fire and Police Commission.

75.     On November 8, 2006, WRIGHT and his defense team conducted a walk through the fire department in preparation of his defense.  The walk through had been previously scheduled with the fire department and attorney Mitchell.  On that date, WRIGHT and his defense team observed WRIGHT's name on the fire department roster board listed as "Lt. Wrong."  The roster board is located in an office next to the fire chief's office.  The roster board identifies the firefighters and the team they are assigned to.  The roster board is hung on a wall in a very prominent location, next to the fire pole, which is used by the firefighters to descend from the second floor of the firehouse .

76.     WRIGHT had complained of harassment in the workplace in the Spring of 2006, to FRANZ and his superiors.  WRIGHT's complaints were never investigated or acted upon by the fire department, the Village, or FRANZ.

77.     WRIGHT has been subjected to repeated forms of harassment by members of the fire department shortly after the charges filed against him.  For example, the "Lt. Wrong," listing on the roster board; his name plate was removed from

13

his locker; and fellow firefighters and employees within the department will not acknowledge him, greet him, or even look at him.

78.    On December 7, 2006, the Village files a motion requesting the Fire and Police Commission's attorney, John Broiher, not be allowed to participate in any of the deliberations on the Moran charges, and not to be present with the Commission in executive session to deliberate over the evidence presented.

79.    The Village filed this motion shortly after Attorney Broiher stated to the Village's attorney that some of the charges against WRIGHT had not been proven. Once again, Attorney Mitchell advised WRIGHT's counsel this motion, like the motion to suspend WRIGHT without pay, was brought at the direction of the Village.

80.    During the motion hearing, the Village failed to present sufficient evidence to prove the charges against WRIGHT.  To the contrary, WRIGHT presented evidence which should have completely exonerated him from the bogus charges.

81.    On December 7, 2006, the Fire and Police Commission issues an oral decision finding WRIGHT guilty on all of the charges filed against him based upon Moran's allegations.

82.    The Village raised issues in aggravation that had been expunged and should not have been in the possession of the Village, in violation of established expungement laws in the State of Illinois, and in violation of WRIGHT's civil rights.  In fact, the Village retained police reports from an incident between WRIGHT and another citizen which had been ordered by a Circuit Court Judge to be expunged, and the Village introduced the reports and incidents in aggravation against WRIGHT.

14

83.    On January 18, 2007, Fire and Police Commission issued a written decision to suspend WRIGHT 30 days from Liz Moran incident.

**Following the Hinko and Moran Hearings**

84.    Following the hearing, Liz Moran remains a POC FF and continues to hold the EOP position, but subsequent to the hearing, has been given more responsibilities, additional compensation, and now has her own office with her name on the door.

85.    In January 2007, the Village replaced Interim Chief Henrici with a newly appointed  fire chief.

86.    WRIGHT ran for Village Trustee in the April 2007 election.  WRIGHT, who had won in a landslide election in 2002, finished last out of six candidates.

87.    Subsequent to the Moran hearing, there have been no allegations of any type of misconduct against WRIGHT.

88.    WRIGHT had to expend great sums in paying for his defense of both the HINKO and Moran hearings.

89.    The Village has not reimbursed or compensated WRIGHT following the hearings, including his time on the books, and pensionable service time.

**COUNT I**
**(42 U.S.C. §1983, FIRST AMENDMENT, POLITICAL AFFILIATION)**

90.    Plaintiff WRIGHT incorporates and realleges against Defendant, Village of HOMEWOOD, paragraphs 1 through 89, as if fully set forth herein.

91.    Plaintiff WRIGHT has been subjected to retaliation based on his political affiliation in violation of his First Amendment rights as secured by the United States Constitution and 42 U.S.C. §1983.

15

92.    The conduct of Defendant, Village of HOMEWOOD, including HOFELD, FRANZ, PRESNAK, and ELASIK, was and became the custom in and practice of the Village of HOMEWOOD.

93.    At all times relevant hereto, Defendant, Village of HOMEWOOD, including HOFELD, FRANZ, PRESNAK, and ELASIK, acted as an employer, supervisor, and/or final policymaker for the Village of HOMEWOOD and its respective agencies.

94.    By Defendant, Village of HOMEWOOD, including HOFELD, FRANZ, PRESNAK, and ELASIK's actions, Plaintiff WRIGHT suffered compensable injuries and harm as a result of the denial of rights guaranteed to him pursuant to the First Amendment to the U.S. Constitution.

95.    The conduct of Defendant, Village of HOMEWOOD, including HOFELD, FRANZ, PRESNAK, and ELASIK, violated Plaintiff WRIGHT's right to free speech and free association as provided by the First Amendment to the Constitution.

96.    The aforementioned conduct of Defendant, Village of HOMEWOOD, including HOFELD, FRANZ, PRESNAK, and ELASIK, has resulted in damages to Plaintiff WRIGHT, including, but not limited to loss of pay, loss of benefits, emotional anguish, loss of job advancement, interference with prospective business, humiliation, embarrassment, and pain and suffering.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff WRIGHT respectfully requests that this Court grant him among the following relief:

A.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff WRIGHT and make him whole;

16

B.      Prejudgment interest;

C.      The Court retain jurisdiction of this case until such time as it is assured

that Defendant has remedied the policies and practices complained of

herein and are determined to be in full compliance with the law;

D.      An award of reasonable attorney's fees, costs, and litigation expenses; and

E.      Such other relief as the Court may deem just or equitable.

### COUNT II
### (42 U.S.C. § 1983, FIRST AMENDMENT, FREE SPEECH)

97.     Plaintiff WRIGHT incorporates and realleges against Defendant, Village of

HOMEWOOD, including HOFELD, FRANZ, PRESNAK, and ELASIK,  paragraphs 1

through 96, as if fully set forth herein.

98.     Plaintiff WRIGHT engaged in protected free speech on matters of public

concern, and subsequently was subjected by Defendant, Village of HOMEWOOD,

including HOFELD, FRANZ, PRESNAK, and ELASIK, to actions that had the effect and

intent of silencing Plaintiff WRIGHT's speech in violation of his First Amendment rights

as secured by the United States Constitution and 42 U.S.C. §1983.

99.     Defendant, Village of HOMEWOOD, including HOFELD, FRANZ,

PRESNAK, and ELASIK's conduct constitutes a pattern, practice, policy and custom of

violating individual's First Amendment rights based upon free speech.

100.    At all times relevant hereto, Defendant, Village of HOMEWOOD, including

HOFELD, FRANZ, PRESNAK, and ELASIK, acted as an employer, supervisor, and/or

final policymaker for the Village of HOMEWOOD and its respective agencies.

17

101.    The conduct of Defendant, Village of HOMEWOOD, including HOFELD, FRANZ, PRESNAK, and ELASIK, was and became the custom and practice of the Village of Homewood  and its Police Department.

102.    By Defendant, Village of HOMEWOOD, including HOFELD, FRANZ, PRESNAK, and ELASIK's actions, Plaintiffs suffered compensable injuries and harm as a result of the denial of rights guaranteed to him pursuant to the First Amendment to the U.S. Constitution.

103.    The conduct of Defendant, Village of HOMEWOOD, including HOFELD, FRANZ, PRESNAK, and ELASIK, violated Plaintiff WRIGHTS right to free speech as provided by the First Amendment to the Constitution.

104.    The aforementioned conduct of Defendant, Village of HOMEWOOD, including HOFELD, FRANZ, PRESNAK, and ELASIK, has resulted in damages to Plaintiff WRIGHT,  including but not limited to the following: loss of pay, loss of benefits, emotional anguish, loss of job advancement, interference with prospective business, humiliation, embarrassment, and pain and suffering.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff WRIGHT respectfully requests that this Court grant him among the following relief:

A.    Compensatory damages in an amount to be determined at trial to compensate Plaintiff and make him whole;

B.    Prejudgment interest;

18

C.      The Court retain jurisdiction of this case until such time as it is assured

that Defendant has remedied the policies and practices complained of

herein and are determined to be in full compliance with the law;

D.      An award of reasonable attorney's fees, costs, and litigation expenses; and

E.      Such other relief as the Court may deem just or equitable.

### JURY DEMAND

**WILLIAM WRIGHT** demands trial by jury on Counts I and II.


Respectfully Submitted,

**WILLIAM WRIGHT**


BY:   s:/ Michael J. McGrath
                One of Plaintiff's Attorneys


Michael J. McGrath
ODELSON and STERK, LTD.
3318 West 95th Street
Evergreen Park, IL 60805
708-424-5678

19